# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **CENTURY SURETY COMPANY,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**DEMOLITION & DEVELOPMENT, LTD.;** )<br>**CITY OF CHICAGO; and AMERICAN** )<br>**ECONOMY INSURANCE COMPANY, as** )<br>**subrogee of Imad Salamah; and** )<br>**IMAD SALAMAH,** )<br>)<br>**Defendants.** ) | **No. 04 C 7188**<br><br>**Judge John W. Darrah** |

## MEMORANDUM OPINION AND ORDER

In this declaratory judgment action, Plaintiff, Century Surety Company, seeks a finding that it has no duty to defend or indemnify two of the Defendants, Demolition & Development, Ltd. ("D&D") and the City of Chicago (the "City"), in an underlying suit arising out of erroneously caused damage to property located at 4708 South Indiana Avenue, in Chicago, Illinois. Count I of Century Surety's Complaint seeks a declaration that the insurance policy held by D&D does not provide for defense or indemnification of D&D in the underlying suit. Count III of the Complaint seeks a declaratory judgment that Century Surety owes no defense or indemnity obligation with respect to the City's Amended Counterclaim, alleging a breach of contract against D&D for its failure to procure insurance coverage for the City and/or adjacent property owners. Count IV seeks a declaratory judgment that Century Surety owes no defense or

1

indemnity obligation with respect to the City's Inverse Condemnation Claim.

Century Surety and D&D have now filed cross motions for summary judgment, each urging the Court to enter judgment in its favor on Counts I, III, and IV of Plaintiff's Complaint. Further, both parties seek cross summary judgment on D&D's claims under Section 155 of the Illinois Insurance Code. These cross motions for summary judgment are currently before this Court.

## LEGAL STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986) (*Celotex*). All of the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*). However, a party cannot defeat summary judgment by relying on unsubstantiated facts. *See Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001) (*Greer*).

## BACKGROUND

The undisputed facts, for the purposes of these motions, taken from the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1"; "Def. D&D's 56.1" as to D&D's Rule 56.1 statement; and "Def. City's 56.1" as to Defendant, City's Rule 56.1 statement and exhibits, are as follows.

Century Surety is an Ohio-based insurer, which provided a liability insurance policy held by one of the defendants, D&D, an Illinois-based company, which provided demolition services to various private and public clients. (Pl.'s 56.1 ¶¶ 1-2, 13).[1]

On June 23, 2004, pursuant to a court order entered by Judge William Pileggi of the Circuit Court of Cook County, property located at 4710-20 South Indiana Avenue in Chicago, with Permanent Index Number (or PIN) 20-10-102-013, and a corresponding legal description of the property, was to be demolished. (Pl.'s 56.1 ¶ 9). On June 24, 2004, the President of D&D, Gene Lopresti, received a phone call from Ofelia Hernandez, an office administrator at the City's Department of Buildings, requesting a verbal bid on an emergency tear down of a building located at 4710-20 South Indiana Avenue. (Pl.'s 56.1 ¶ 10). On that same day, Mr. Lopresti submitted a verbal bid and was later advised that D&D won the contract to demolish the 4710-20 South Indiana Avenue property. (Pl.'s 56.1 ¶ 10).

On June 29, 2004, Mr. Lopresti and three other D&D employees went to the demolition site on South Indiana Avenue. (Pl.'s 56.1 ¶ 11). Mr. Lopresti was uncertain which buildings to tear down, since three buildings were near the demolition location and no addresses were posted on any of the buildings. (Pl.'s 56.1 ¶ 11). Mr. Lopresti called Ms. Hernandez at the City's Department of Buildings to verify which of the buildings to demolish. (Pl.'s 56.1 ¶ 11). Ms. Hernandez verified the buildings by reference to a "Sandborn" map and advised Mr. Lopresti that

---

[1] In addition to D&D, there are three other defendants in the case: the City, who contracted with D&D; Imad Salamah, the owner of the mistakenly demolished building; and American Economy Insurance Company, an Indiana-based insurer with a principle place of business in Seattle, Washington, who insured Mr. Salamah. (Pl.'s 56.1 ¶ 2-5, 10, 12). Defendants American Economy and Mr. Salamah are named in this matter as interested parties. (Pl.'s 56.1 ¶ 4-5).

three buildings were to be demolished: a one-story, a two-story, and another one-story building, from North to South. (Pl.'s 56.1 ¶ 11). Mr. Lopresti visually inspected the buildings for utilities and vagrants and confirmed that each building was vacant and without connected utilities. (Pl.'s 56.1 ¶ 11). Then D&D began the demolition of the three buildings. (Pl.'s 56.1 ¶ 11).

Soon thereafter, the owner, Mr. Salamah emerged from a building just north of the demolition site to inquire why the City was knocking down his building, 4708 South Indiana. (Pl.'s 56.1 ¶ 12). Mr. Lopresti then produced the court order and advised Mr. Salamah that he was hired to demolish the buildings at 4710 - 4720 South Indiana. (Pl.'s 56.1 ¶ 12). Mr. Salamah, in turn, advised Mr. Lopresti that the northern-most building being demolished was in fact 4708 South Indiana and produced documentation showing that he was the legal owner of that building. (Pl.'s 56.1 ¶ 12). Mr. Lopresti then called Ms. Hernandez at the City to notify her of the problem. (Pl.'s 56.1 ¶ 12). Soon thereafter, a City Inspector, Hector Exclusa, arrived at the demolition site and advised Mr. Lopresti that the 4708 South Indiana Avenue building was not subject to the court order. (Pl.'s 56.1 ¶ 12).

Mr. Salamah and his insurer, American Economy, made a claim against D&D and the City for the demolition of the property located at 4708 South Indiana Avenue. (Pl.'s 56.1 ¶ 12). American Economy Insurance paid Mr. Salamah for the damage caused to his building and brought a subrogation action against D&D. (Pl.'s 56.1 ¶ 12).

D&D was insured by Century Surety in an insurance policy effective from April 1, 2004 until April 1, 2005. (Pl.'s 56.1 ¶ 13). D&D notified Century Surety of Mr. Salamah's and American Economy's claims. (Pl.'s 56.1 ¶ 14; Def. D& D's 56.1 ¶ 14). In a letter dated October

6, 2005, Century Surety denied coverage to D&D for those claims. (Pl.'s 56.1 ¶ 14; Def-D& D's 56.1 ¶ 14).

The Century Surety policy provides certain general liability coverage. (Def. D& D's 56.1 ¶ 17). Paragraph 1(b)(1) of Section 1 of Plaintiff's insurance policy with damage covers any property damage "caused by an 'occurrence' that takes place in the coverage territory." (Pl.'s 56.1 ¶ 13). Paragraph 3 of Section D of the Special Exclusions and Limitations Endorsement states that an:

> "[o]ccurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All "bodily damage" or "property damage" arising out of an occurrence or series of related "occurrences" is deemed to take place at the time of the first such damage or injury even though the nature and extent of such damage or injury may change; and even though the damage may be continuous, progressive, cumulative, changing or evolving; and even though the "occurrence" causing such "bodily injury" or "property damage" may be continuous or repeated exposure to substantially the same general conditions.

(Pl.'s 56.1 ¶ 13). A number of exclusions are also included in the insurance policy. Paragraph 2(a) of Section 1 of the policy excludes from coverage " '[b]odily damage' or 'property damage' expected or intended from the standpoint of the insured." (Pl.'s 56.1 ¶ 13).

Paragraph 2(j) excludes, in pertinent part, coverage for property damage to:

> (5) That particular part of the real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> (6) That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.

(Pl.'s 56.1 ¶ 13).

5

Paragraph 2 of the Contractors Amendatory Endorsement excludes from coverage " '[p]roperty damage' to 'your work'. . . ." Paragraph 22 of Section V of the insurance policy defined "your work" as:

> (1) Work or operations performed by you or on your behalf; and
>
> (2) Materials, parts or equipment furnished in connection with such work or operations.
>
> B. Includes:
>
> (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work," and
>
> (2) The providing of or failure to provide warnings or instructions.

Pursuant to the "Additional Insured – State or Political Subdivisions – Permits" endorsement, the City is insured under the policy. However,

> 1. This insurance applies only with respect to operations performed by you or on your behalf for which the state or political subdivision has issued a permit.
>
> 2. This insurance does not apply to
>
> a. "Bodily injury," "property damage" or "personal and advertising injury" arising out of operations performed for the state or municipality or

(Pl.'s 56.1 ¶ 13).

On November 5, 2004, Century Surety filed this declaratory judgment action, seeking declaratory statements as to its liability to D&D and the City for the damage caused to the property located at 4708 South Indiana Avenue. (Complaint).

On March 30, 2005, American Economy, as subrogee of Mr. Salamah, filed its Complaint in the United States District Court of the Northern District of Illinois before

6

Judge Der-Yeghiayan, Case Number 05-C-1791, against D&D and the City. (Pl.'s 56.1 ¶ 15).

Hereinafter, this suit is referred to as the *"American Economy* suit." In the *American Economy* suit, the Plaintiffs sought damages in an amount of $307,429. (Pl.'s 56.1 ¶ 15). Both D&D and the City have demanded that Century Surety defend and indemnify them, respectively, in the *American Economy* suit under the Century Surety policy held by D&D. (Pl.'s 56.1 ¶ 16).

Century Surety again denied coverage – for both defense and indemnity for D&D and the City in the *American Economy* suit, which was filed on April 12, 2005.

On June 7, 2005, American Economy filed its Second Amended Complaint in the *American Economy* suit, asserting a claim for inverse condemnation against the City. (Pl.'s 56.1 ¶ 19).

On June 22, 2005, the City filed its Amended Counterclaim in the *American Economy* suit, alleging a breach of contract against D&D for its failure to procure insurance coverage for the City and/or adjacent property owners on account of D&D's activities on behalf of the City pursuant to the Master Term Agreement Contract between the parties and the City Ordinance. (Pl.'s 56.1 ¶ 18).

## ANALYSIS

*Count I of Century Surety's Complaint*

In Count I of its complaint, Century Surety seeks a declaration that D&D's policy does not entitle it to coverage with respect to the damage to the 4708 South Indiana Avenue building. Century Surety concedes that property damage took place, as defined in the insurance policy. However, Century Surety contends that no "occurrence" took place which requires Century Surety to cover D&D for this incident. Plaintiff also argues that even if an occurrence took

place, three exclusions apply which exempt Plaintiff from its obligation: (1) the "expected or intended" exclusion; (2) an exclusion for property damage to real property caused by the insured's operations, provided that the damage arises from those operations; and (3) the "your work" exclusion.

Because jurisdiction for the claim is based on diversity of citizenship, Illinois law governs the resolution of this action. *Miniat v. Ed Miniat, Inc.*, 315 F.3d 712, 714 (7th Cir. 2002). The construction of an insurance policy is a question of law. *Guillen* ex rel. *Guillen v. Potomac Ins. Co.*, 785 N.E.2d 1, 6 (Ill. 2003). Under the insurance policy provision cited above, an "occurrence" is defined as an "accident." "An accident" is defined under Illinois law as "an unforeseen occurrence, usually of an untoward or disastrous character, or an undesigned sudden or unexpected event of an inflictive or unfortunate character." *Massachusetts Bay Ins. Co. v. Vic Koening Leasing Co.*, 136 F.3d 1116, 1124 (7th Cir. 1998) (citation omitted).

Plaintiff argues that no accident occurred because D&D "intended" to demolish the building located at 4708 South Indiana Avenue, despite the error that occurred in identifying the properties that were subject to the demolition order. According to Plaintiff, because property damage is expected to occur during a demolition, the property damage which occurred in this case could not be classified as unforeseen, undesigned, sudden, or unexpected.

The Defendant, D&D, argues that it was an accident, citing *Lyons v. State Farm Fire & Casualty Co.*, 349 Ill.App.3d 40 (Ill. App. Ct. 2004). In *Lyons*, the insured built a structure that encroached his neighbor's property line. However, the plaintiff did not intentionally erect a structure on his neighbor's property at the direction of another. Here, it is uncontested that D&D destroyed the 4708 South Indiana property based on the explicit (and erroneous)

instructions from Ms. Hernandez after she referred to the Sandborn map. Illinois law provides that the natural and ordinary consequences of an act do not constitute an "accident." *Aetna Cas. & Sur. Co. v. Freyer*, 84 Ill. App.3d 617, 619 (1980). The Plaintiff reasons that the natural and ordinary consequence of "slamming into the subject buildings" after being directed to do so by an agent of the City, is the destruction of the building. Accordingly, the destruction of 4708 South Indiana Avenue cannot be said to be an accident and therefore an occurrence within the terms of the insurance policy.

Plaintiff, Century Surety, next argues that even if an occurrence took place, three exclusions apply which exempt Plaintiff from its obligation: (1) the "expected or intended" exclusion; (2) an exclusion for property damage to real property caused by the insured's operations, provided that the damage arises from those operations; and (3) the "your work" exclusion.

As more fully set out above, paragraph 2(a) of Section 1 of the policy excludes from coverage " 'property damage' expected or intended from the standpoint of the insured." This "clause has been interpreted as requiring a specific intent or expectation that the [property damage] will occur." *Argento v. Vill. of Melrose Park*, 838 F.2d 1483, 1497 (7th Cir. 1988) (*Argento*), *abrogated on other grounds*, *Peacock v. Thomas*, 516 U.S. 349 (1996). The terms "expected" and "intended" are not synonymous, but expectation is easier to prove. *Argento*, 838 F.2d at 1497 n.22. "Whether [property damage] was expected is a subjective inquiry, but a subjective expectation can be inferred from objective evidence that the injury was the natural and probable result from the act." *Argento*, 838 F.2d at 1497.

The property damage is the expected result of the destruction of property; thus, when D&D received verification from the City as to which property was to be destroyed, the property damage occurring from the destruction of 4708 South Indiana Avenue was expected and is, therefore, excluded from coverage.

Plaintiff also contends that the work product exclusions 5 and 6 of Paragraph 2(j) of Section 1 exclude coverage. Those provisions exclude coverage for property damage: (1) occurring from the insured's operations which are performed on the property; or (2) which must be restored because the insured's work was performed improperly. According to Plaintiff, 4708 South Indiana Avenue was destroyed while D&D was performing operations on that property and that D&D's operation was to damage the property.

In support of its argument, Plaintiff cites *Pekin Insurance Co. v. Willett*, 704 N.E.2d 923, 926 (Ill. App. Ct. 1998). The insurer in *Pekin Ins. Co.* was not liable on the policy when the contractor caused property damage to the property on which the contractor was hired to "perform operations." *Pekin Ins. Co.*, 704 N.E.2d at 926. As in *Pekin*, D&D was hired and directed to destroy a specific building and did so as directed; it was only later determined that the wrong building was selected for demolition.

Plaintiff further contends that the "your work" exclusion of Paragraph 2 of the Contractors Amendatory Endorsement precludes coverage. "Your work" is defined, in pertinent part, as "[w]ork or operations performed by you." As discussed above, D&D was hired to perform work or operations on the building destroyed within the meaning of that exclusion.

10

As a result, there are no genuine issues of material fact with respect to whether Century Surety has a duty to defend and indemnify D&D in the *American Economy* suit; and summary judgment as to Count I of Century Surety's Complaint is appropriate. For the foregoing reasons, summary judgment as to Count I of Plaintiff's Complaint is granted in favor of Plaintiff, Century Surety, and against the Defendant, D&D.

*Count III of Century Surety's Complaint –*

*City of Chicago's Counterclaim in the <u>American Economy</u> Suit*

As to Count III, Plaintiff Century Surety seeks summary judgment because it contends that there are no genuine issues of material fact as to whether coverage or indemnification as to D&D is available under the Century Surety policy for the Counterclaim filed by the City against D&D in the *American Economy* suit.

The City's counterclaim is pled in two counts: for quasi-contract and for breach of contract against D&D for its alleged failure to procure appropriate insurance coverage for the City, pursuant to Section 13-32-240 of the City Ordinance, and/or pursuant to the terms of the Master Term Agreement Contract. Century Surety claims that the failure of D&D to procure insurance on behalf of the City is not covered under Century's policy and, thus, that Century Surety has no duty to defend D&D, citing *Reliance Insurance Co. v. Giannini, Inc.*, 158 Ill. App. 3d 657 (1st Dist. 1987) (*"Reliance"*) and *Aetna Casualty & Surety, Co.*, 726 F. Supp. 204 (N.D. Ill. 1989) (*"Aetna Casualty"*).

The Defendant, D&D, counters that the Plaintiff's reliance on *Aetna Casualty* and *Reliance* with respect to the indemnification claim is misplaced. D&D argues, instead, that Illinois law is clear that if one claim in the underlying suit is potentially covered, the insurer has a

duty to defend all claims, citing *United States Fidelity & Guarantee Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64,73 (Ill. 1991) (*"Fidelity & Guarantee Co."*).

In *Aetna Casualty*, a third-party sought both defense and indemnification from its insurer, Aetna. *Aetna Casualty*, 726 F. Supp. at 206. Aetna agreed to defend and indemnify the third-party with respect to two of the counts, which were based on common law negligence and the Illinois Structural Work Act, but refused to provide either defense or indemnification for the third count, which alleged breach of contract against the third-party. *Aetna Casualty*, 726 F. Supp. at 205-06. The court found that because the general coverage provision does not provide coverage for damages resulting from breach of contract, which formed the basis of count III of the complaint, it had no obligation to indemnify the third-party. *Aetna Casualty*, 726 F. Supp. at 206. That court, however, found the duty to defend extends to accompanying claims not within policy coverage, noting that "the Seventh Circuit has continually recognized that in Illinois, an insurer's duty to defend may extend to claims which are not within policy coverage." *Aetna Casualty*, 726 F. Supp. at 207, 208. *See also Fidelity & Guarantee*, 144 Ill. 2d at 73 ("[I]f the underlying complaints allege several theories of recovery against the insured, the duty to defend arises even if only one such theory is within potential coverage of the policy.")

Here, because no claims are actually or potentially covered in the underlying suit, the Plaintiff Century Surety is neither required to defend D&D for the Counterclaim filed by the City against D&D in the *American Economy* suit.

The next inquiry is whether Century Surety must indemnify D&D with respect to the Counterclaim filed by the City. Century Surety owes D&D no duty to indemnify. To the contrary, the City relies on the Master Contract between the City and D&D at Article 3, which

12

provides an indemnification clause of the contract between the City and D&D as follows: "The Contractor [D&D] agrees to defend, indemnify and hold the City, . . . completely harmless from any and all liabilities, losses, suits . . . by reason of injury or death of any person or damage to property arising out of or incident to the execution of any Services or Work or otherwise related to [D&D's] performance or non-performance (including but not limited to negligent or intentionally tortious acts . . . ) . . . except and solely to the extent that any such Claims are shown by final judgment rendered by a court of competent jurisdiction to have been caused by or attributed to the City's own negligence." The City contends this creates an "insured contract," imposing duty on Century Surety to indemnify D&D. However, that is not the question here. The issue is whether Century Surety has the duty to indemnify D&D, not the underlying dispute of whether D&D must indemnify the City because of D&D's tortious or other improper performance pursuant to their contract. Based on the undisputed facts, Century Surety owes D&D no duty of indemnification on the breach of contract or quasi-contract claim.

Plaintiff's, Century Surety's Motion for Summary Judgment with respect to Count III is granted. Defendant's, D&D's, Motion for Summary Judgment with respect to Count III of the Plaintiff's Complaint is denied.

*Count IV of Century Surety's Complaint: City of Chicago's Inverse Condemnation Claim*

Count IV of Century Surety's Complaint seeks a declaratory judgment that the Century Surety policy does not provide coverage to the City "for claims for damage arising out of operations performed for the state or municipality by D&D" with respect to the inverse condemnation claim filed against the City in the *American Economy* suit.

13

This Court issued an Order on September 6, 2005, granting Century Surety judgment on the pleadings with respect to Count II of Century Surety's Complaint. Quoting the City's Answer to the Second Amended Complaint, this Court wrote, "Plaintiff's policy 'excludes coverage for damage arising out of operations performed for the state or municipality by' Demolition & Development." (Court's September 6, 2005 Order). Therefore, this issue now is moot.

### *Count II of Demolition & Development's Counterclaim: Section 155 Damages*

Defendant's, D&D's, Counterclaim in the *American Economy* suit asserts a claim for alleged vexatious and unreasonable handling practices pursuant to Section 155 of the Illinois Insurance Code. Section 155 is an insured's remedy against an insurer who imposes difficulty on the insured by unnecessarily and unreasonably withholding policy benefits. *Golden Rule*, 203 Ill. 2d at 468. Plaintiff, Century Surety, seeks to dismiss D&D's counterclaim brought under 215 ILCS 5/155 because it asserts that a *bona fide* dispute as to covering the claim exists.

As Century Surety points out, D&D points to "[n]o set of facts, behavior or actions of any kind demonstrating supposed 'unscrupulous' conduct"; and "Century denied coverage to D&D based upon the facts set forth in this suit, and the subsequently filed *American Economy* suit. Century Surety immediately filed this declaratory judgment action . . . prior to the *American Economy* suit ever being filed. Further, D&D . . . moved to dismiss this declaratory judgment action asserting that it was premature . . . ." (Pl.'s Reply at 7). Although D&D claims prejudice by the denial of coverage in the underlying action in that it has incurred defense fees in defending two suits, there are no facts that would allow D&D to defeat Century Surety's motion for

14

summary judgment nor allow the summary judgment to be entered on its behalf. *Greer v. Board of Educ.*, 276 F.3d at 729.

For the aforementioned reasons, a *bona fide* dispute existed regarding the claims under the policy. Plaintiff's, Century Surety's, Motion for Summary Judgment with respect to D&D's claim under Section 155 is granted. Defendant's, D&D's Motion for Summary Judgment with respect D&D's claim under Section 155 is denied.

## CONCLUSION

For the foregoing reasons, Plaintiff, Century Surety's Motion for Summary Judgment is granted. Defendant, D&D's Motion for Summary Judgement is denied.

Date: January 18, 2006

JOHN W. DARRAH, Judge
United States District Court